UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-80158-CIV-MIDDLEBROOKS/JOHNSON

3700 ASSOCIATES, LLC,
a Delaware limited liability company,

        Plaintiff,

vs.

TIM GRIFFIN, SR., an individual, and
GRIFFIN IT MEDIA, INC.,
a Florida Corporation,

        Defendants.
_____/

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' (CONVERTED)
MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss (DE 8), which was converted to a Summary Judgment Motion per Court Order dated August 1, 2008 (DE 24). Defendants filed a response (DE 29) to which Defendant filed a reply (DE 32). I have reviewed the Motion, the responsive pleadings, and the record in this matter.[1]

**I. Background**

This is an action for trademark infringement, unfair competition, and cybersquatting under the Lanham Act and state common law. Defendants originally filed a Motion to Dismiss Pursuant to FED.R.CIV.P. Rule 12(b)(6). In their Motion, Defendants included facts not alleged in the Complaint and citations to numerous documents. FED.R.CIV.P. Rule 12(d) states that, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court,

---

[1] Other relevant docket entries include DE 13, Defendants' Memorandum in Support of their Motion to Dismiss; DE19, Plaintiff's Memorandum in Opposition to the Motion to Dismiss; and DE 21, Defendants Response in Support of their Motion to Dismiss.

1

the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to that motion." *Id.* Accordingly, I converted Defendants' Motion into one for summary judgment and gave Plaintiff an opportunity to respond with its evidence.

**II. Facts**

Plaintiff alleges the following facts in its Complaint. Corporate Plaintiff owns and is building "The Cosmopolitan Resort & Casino" in Las Vegas, Nevada. Since as early as February 2005, Plaintiff has continuously used the COSMOPOLITAN mark (including the COSMOPOLITAN word mark and COSMOPOLITAN logo marks)[2] in advertising and marketing materials to promote its goods and services. The "THE COSMOPOLITAN RESORT & CASINO" name and logo are service marks owned by Plaintiff and registered on the Principal Register of the United States Patent and Trademark Office.[3] Plaintiff states that it has spent millions of dollars to advertise and promote its goods and services under the COSMOPOLITAN Marks ("Marks") in the media, including via the Internet at cosmolv.com. Plaintiff asserts that it has the exclusive right to use the Marks in connection with resort hotel casino and condominium services.

The dispute arises over Defendants' registration and use of the Internet domain name "cosmopolitanresort.com," (the "Domain Name") which occurred on or about August 15, 2003. Plaintiff claims that "Cosmopolitan" was a distinctive mark for resort services, while Defendants did

---

[2] Collectively, "the COSMOPOLITAN Marks" or "the Marks."

[3] Plaintiff states that it has registered THE COSMOPOLITAN RESORT & CASINO for real estate services featuring condominiums and THE COSMOPOLITAN RESORT CASINO (and design) for real estate services featuring condominiums, among others. Plaintiff also asserts that it has "several federal trademark applications pending" to register other "COSMOPOLITAN" Marks.

not have any trademark rights in the mark. Plaintiff alleges that Defendants linked their Domain Name to a directory website containing multiple advertising links, with pop-up advertisements that redirected consumers to various other Las Vegas-oriented websites in an attempt to frustrate or divert Internet traffic intended for Plaintiff. Plaintiff subsequently filed suit against Defendants in Nevada, at which point Defendants altered the directory links on their website and removed "Las Vegas" and "Nevada" references.[4] In the case at bar, Plaintiff maintains that Defendants continue to use the Domain Name to redirect consumers and divert traffic intended for Plaintiff, although they have not registered and/or used the Domain Name in good faith. Further, Plaintiff asserts that Defendants were and are attempting to trade on Plaintiff's good will by attempting to create an association between their services and Plaintiff. Accordingly, Plaintiff's Complaint alleges five causes of action: (I) Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114; (II) Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a); (3) Cybersquatting under the Lanham Act, 15 U.S.C. § 1125(d); (4) Common Law Trademark Infringement; and (5) Common Law Unfair Competition.

### III. Legal Standard

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Imaging Bus. Mach., LLC v. BancTec, Inc.*, 459 F.3d 1186, 1189 (11th Cir. 2006). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-

---

[4] The Nevada lawsuit was dismissed on FED.R.CIV.P. Rule 12(b)(2) grounds (lack of personal jurisdiction over defendants).

moving party. *See Arrington v. Cobb County*, 139 F.3d 865, 871 (11th Cir. 1998); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in their favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Further, conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment. *See Earley*, 907 F.2d at 1081. The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322.

If the record presents factual issues, a court must not decide them; it must deny the motion and proceed to trial. *See Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *See Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *See Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see also Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)("[T]he dispute about a

material fact is genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party").

### IV. Analysis

#### A) Lanham Act Trademark Infringement and Unfair Competition Claims

As I determine whether there are any genuine issues of material fact for trial or whether Defendants are entitled to judgment as a matter of law, I shall consider the evidence and all reasonable factual inferences drawn therefrom in favor of Plaintiff. First, Plaintiff claims trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). Because trademark infringement is a type of unfair competition, the two claims have virtually identical elements, and they are properly addressed together as an action brought . . . under Section 43 of the Lanham Act. *Utah Lighthouse Ministry v. Found for Apologetic Info. and Research*, 527 F.3d 1045 (10th Cir. 2008); *see Two Pesos, Inc. v. Taco Cabana Inc.*, 505 U.S. 763, 768 (1992).

Trademarks are "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods . . . from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. A plaintiff seeking to prevail on a trademark infringement claim must show 1) that he had a valid trademark and 2) that the defendant had adopted an identical or similar mark such that consumers were likely to confuse the two. *See* 15 U.S.C. § 1125(a); *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792 (11th Cir. 2003); *Planetary Motion, Inc., v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001); *Leigh v. Warner Bros.*, 212 F.3d 1210 (11th Cir. 2000). The plaintiff's use of the mark must predate the defendant's potentially confusing mark. *Leigh*, 212 F.3d at 1216-17 (citing 15 U.S.C. § 1127).

Defendants claim that they are a senior user of the trademark because they used the term

COSMOPOLITAN about eighteen months before Plaintiff. *See* Joint Pretrial Stip. p. 3. However, Plaintiff asserts that "some time after Plaintiff began using its COSMOPOLITAN Marks, Defendants linked the Domain Name to a directory website containing multiple advertising links." *See* Complaint, ¶ 18.[5] Whereas Defendants state that "shortly after registering the [Domain Name, they] produced a website identifying 'Cosmopolitan' resorts and hotels and providing information about various travel accommodations,"[6] Plaintiff maintains that "there is no evidence before this Court demonstrating when Defendants first began using the 'Cosmopolitan' marks on their website for links to commercial sites other than Plaintiff's."[7] Defendants claim that they used the Domain Name to host a website providing search engine services for approximately 18 months prior to Plaintiff's acquisition of rights, but they fail to provide proof of use of the term at a specific point in time.[8] Thus, the timing of Defendants' use remains an issue of material fact.

Alternatively, Defendants posit that their website is not a "use in commerce" because it does not compete with Plaintiff for the sale of hotel, resort, or condo services. *See* Joint Pretrial Stip. p. 3. Recently, the Eleventh Circuit has clarified the elements that a plaintiff must proof in a trademark infringement case. To be precise, Plaintiff must establish (1) that it possesses a valid mark (2) that was used by Defendants (3) "in commerce" (4) "in connection with the sale . . . or advertising of any

---

[5] Similarly, in its Opposition to Defendants' Motion to Dismiss, Plaintiff claims that "as soon as [it] obtained trademark rights in the COSMOPOLITAN Marks and developed good will in its marks, Defendants began to target Plaintiff by creating directory pages [with links] . . ." *See* Plaintiff's Opposition to Defendants' Motion to Dismiss (DE 19-1), p.2. Elsewhere in the response, Plaintiff asserts that "some time after [it] began using the Marks," Defendant created the links. *Id.* at p.4.
[6] Defendants' Memorandum in Support of Motion to Dismiss (DE 9-1), p.3, and Griffin Dec. ¶ 6.
[7] Plaintiff's Opposition to Defendants' Motion to Dismiss (DE 19-1), p.7
[8] *See* Defendants' Reply Memorandum Supporting Motion for Summary Judgment, pp. 1, 2. The Court notes that, in the Pretrial Stipulation, the Concise Statement of Uncontested Facts says that "Defendant Griffin became working with Domain Sponsor in 2005 so that he could make money off of his domain names . . ." ¶ 13. This general statement fails to resolve the issue.

goods (5) in a manner likely to confuse consumers. *See N. Am. Med. Corp. v. Axiom Worldwide*, 522 F.3d 1211, 1221 (11th Cir. 2008). Although the Eleventh Circuit has quoted another court's language that "[t]he nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's 'in commerce' requirement,"[9] the Court has not squarely determined whether websites such as Defendants qualify as a commercial use, and other circuits have been split on the issues. *See, e.g., Utah Lighthouse Ministry*, 527 F.3d at 1051-54; *People for Ethical Treatment of Animals (PETA) v. Doughney*, 263 F.3d 359 (4th Cir. 2001); *Planned Parenthood Fed'n of Am., Inc., v. Bucci*, 1997 WL 133313 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 920 (2d. Cir.), *cert. denied*, 525 U.S. 834 (1998). Accordingly, Defendants' use of the Domain Name remains an issue of material fact.

Trademarks are classified in categories of generally increasing distinctiveness: 1) generic marks that suggest the basic nature of the product or service; 2) descriptive marks that identify the characteristic or quality of a product or service; 3) suggestive marks that suggest characteristics of the product or service and require an effort or the imagination by the consumer in order to be understood as descriptive; and 4) arbitrary or 5) fanciful marks that bear no relationship to the product or services. *See Two Pesos*, 505 U.S. at 768 (1992); *Gift of Learning Found.*, 329 F.3d at 797-98; *Frehling Enter., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). The distinction between descriptive and generic terms is a matter of degree. *Gift of Learning Found.*, 329 F.3d at 798; *see Am. Television & Commc'n Corp. v. Am. Commc'n & Television, Inc.*, 810 F.2d 1546, 1548-49 (11th Cir. 1987).

---

[9] *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195 (11th Cir. 2001) (quoting *Planned Parenthodd Fed'n of Am., Inc. v. Bucci*, 1997 WL 133313 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 920 (2d. Cir.), *cert. denied*, 525 U.S. 834 (1998).

In the case at bar, Plaintiff asserts that its mark is arbitrary, or at minimum, suggestive, and thus entitled to protection. *See* Plaintiff's Opposition to Defendants' Motion to Dismiss (DE 19-1), p. 11. Plaintiff states that the mark is protectible because it is inherently distinctive, Plaintiff has acquired exclusive use, and the Marks have acquired secondary meaning in the mark through its significant efforts to promote the Marks and its real estate services. Defendants argue that the COSMOPOLITAN Marks are a descriptive term, as evidenced by the extent to which third parties use the mark. Defendants cite a number of hotels and resorts in support of their proposition, and further note that Plaintiff disclaimed the exclusive use of the Marks in its trademark application. Evidence demonstrates that Plaintiff's Marks are merely descriptive and not "inherently distinctive."[10] First, the words in the Marks consist of (1) "Cosmopolitan," a term frequently used to describe a hotel or resort; and (2) "Resort and Casino" or "Resort Casino," words that describe the goods that Plaintiff is providing. *See Gift of Learning Found.*, 329 F.3d at 799. Second, evidence of myriad hotels and resorts around the world using the term "Cosmopolitan" indicates that the term is not a particularly innovative idea. *See id.* Third, although not determinative, Plaintiff disclaimed the exclusive use of the terms in its trademark applications. Finally, Plaintiff has not had more than five years of continuous, exclusive use, as it first began promoting its resort hotel casino and

---

[10] Another district court has provided excellent examples of the different types of trademarks. Chief Judge Roettger noted that a "generic mark," which is not eligible for trademark protection, is a mark which simply provides information about the nature or class of product or service; a "descriptive mark," which is entitled to trademark protection only upon a showing that it has acquired a secondary or distinctive meaning, is a mark which simply describes the product or service itself; a "suggestive mark," which will be protected without proof of secondary meaning, is a mark that subtly connote something about the service or product at issue, such as "Eskimo Pie" for ice cream bars; an "arbitrary mark" is one that bears no relationship to the product or service at issue, such as the word "Apple" to sell computers; and a "fanciful mark," which is entitled to the broadest scope of trademark protection because it is completely original, such as "Xerox" or "Kodak." *See Breakers of Palm Beach, Inc., v. Internl Beach Hotel Development, Inc.*, 824 F.Supp. 1576, 1582-83.

condominiums in 2005. *See id.* at 799-800.

Since a descriptive term is not inherently distinctive, it is protectible only if it acquires a secondary meaning. *Gift of Learning Found.*, 329 F.3d at 798; *see Am. Television & Commc'n Corp.*, 810 F.2d at 1548. The Eleventh Circuit has held that a plaintiff has the burden of sustaining a high degree of proof establishing a secondary meaning for a descriptive term. *Leigh*, 212 F.3d at 1216-17; *see Two Pesos*, 505 U.S. at 769; *Investicorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1525 (11th Cir. 1991). A secondary meaning is used generally to indicate that a mark or dress "has come through use to be uniquely associate with a specific source." *Two Pesos*, 505 U.S. at 766 n.4 (1992) (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 13, cmt. *e* (Tent.Draft. No. 2, Mar. 23, 1990)). To establish a secondary meaning, a [plaintiff] must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself. *Two Pesos*, 505 U.S. at 766 n.4 (quoting *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 851 n.11 (1982)); *see also Gift of Learning Found.*, 329 F.3d at 800. Thus, Plaintiff must demonstrate that its mark acquired secondary meaning before Defendants began to use the Domain Name. *See Leigh*, 212 F.3d at 1216-17; *Gift of Found.*, 3299 F.3d at 800 (quoting J.T. McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 16:34 (4th ed. 1997) ("[T]he senior user must prove the existence of secondary meaning in its mark at the time and place the junior user first began use of that mark.")). As of the date that its COSMOPOLITAN Marks were registered, Plaintiff is entitled to a presumption that its Marks acquired secondary meaning. *See Gulf Coast Commercial Corp. v. Gordon River Hotel Assoc.*, 508 F.Supp.2d 1157 (M.D.Fla. 2007). That presumption is refutable by Defendants, and Plaintiff must still prove that the Marks had secondary meaning prior to the date that Defendants

began using the Domain Name—a date that has yet to be ascertained, as previously noted. Thus, there are genuine issues of material fact as to whether Plaintiff has acquired secondary meaning in its Marks, and if so, at what point in time.

Because I find that issues of material fact remain, it is not necessary to address whether Plaintiff has proved the likelihood of confusion between the two names at this time. *See Investacorp*, 931 F.2d at 1548 ("Only if plaintiff has proved [that it has a protectable mark] need we reach the issue of whether it has also proved the likelihood of confusion between the two names, the other element needed for recovery"); *Gulf Coast Commercial Corp.*, 508 F.Supp.2d at 1163. Plaintiff's federal trademark infringement and unfair competition claims survive summary judgment.

### B) Anti-Cybersquatting Protection Act, 15 U.S.C. § 1125(d)

Plaintiff also asserts a claim under the Anti-Cybersquatting Protection Act (ACPA). To prevail under the ACPA, a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit. *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 Fed. Appx. 252 (11th Cir. 2006) (not published in the Federal Reporter) (quoting *Shields v. Zuccarini*, 254 F.3d 476, 482 3d. Cir. 2001). The ACPA reads, in relevant part:

> (d) Cyberpiracy prevention
>
> **(1)(A)** A person shall be liable in a civil action by the owner of a mark, . . . if, without regard to the goods or services of the parties, that person
>
> **(i)** has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> **(ii)** registers, traffics in, or uses a domain name that--

**(I)** in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

**(II)** in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark . . .

15 U.S.C. § 1125(d).

Plaintiff maintains, and Defendants do not dispute, that it continuously has used the COSMOPOLITAN Marks in advertising and marketing materials since as early as February 2005. *See* Complaint, ¶ 10. Plaintiff proffers exhibits to demonstrate this fact. *See* Opposition to Motion for Summary Judgment, (Bradley Declaration, Kreiger Declaration, and Trademark Registration pages and exhibits). Plaintiff filed its application to register the "THE COSMOPOLITAN RESORT & CASINO" and "THE COSMOPOLITANT RESORT CASINO" Marks on the Principal Register in November 2004, and has several more applications pending to register other COSMOPOLITAN Marks. *See* Complaint, ¶ 11. Plaintiff further states that Defendants registered the Domain Name with a domain name registrar on or about August 13, 2003, but maintains that "the fact that Defendants registered the Domain Name a little over a year before Plaintiff began its COSMOPOLITAN Marks is of no consequence to the analysis of whether Defendants violated the ACPA." *See* Plaintiff's Opposition to Defendants' Motion to Dismiss, p.10; *see* Complaint at ¶ 15.

Contrary to Plaintiff's assertion, I find that this is a critical fact. It is evident to me—and agreed by all parties—that Plaintiff's Marks did not exist at the time that Defendants registered the domain name in August, 2003. Plaintiff weakly proposes that "[a]t the time Defendants registered the [Domain Name at issue], 'Cosmopolitan' was distinctive as a mark for resort services." *See id.* at ¶ 16. However, I find this to be a conclusory assertion unsupported by the record.[11] The term

---

[11] Compare, for example, the facts of this case with *Victoria's Cyber Secret Ltd. Partnership v. V. Secret Catalogue*, Inc., 161 F.Supp.2d 1339 (S.D.Fla. 2001), which involved a strong arbitrary

"Cosmopolitan" is a descriptive word meaning "international," "multinational, or "sophisticated." Clearly, the term itself is not distinctive or famous standing alone in the context of resort services; arguably, it is most distinct in another context, as the title of a woman's magazine. Moreover, even assuming that Plaintiff has developed the term such that it <u>has</u> become distinctive or famous with regard to its Marks and resort services,[12] this has only occurred since February 2005, approximately 16 months after Defendants registered the Domain Name. To prevail on an ACPA claim, the Act plainly requires that the plaintiff's mark is "distinctive" or "famous" **at the time of registration of the domain name**. According to the parties' agreed-upon timeline, I find as a matter of law that Plaintiff cannot prevail on its ACPA claim. Simply put, at the time that Defendants registered the Domain Name, Plaintiff's COSMOPOLITAN Marks were not distinctive or famous because the Marks did not exist, and the term "Cosmopolitan" standing alone was not distinctive or famous in real estate services.

### C) Common Law Claims

Common law claims of trademark infringement and unfair competition are analyzed in the same manner as the federal trademark infringement claim. *See Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003); *Planetary Motion, Inc., v. Techsplosion Inc*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition"). Therefore, consistent with discussion of the Lanham Act claims for trademark infringement and unfair competition, *supra* Section A, the common law claims also survive summary judgment.

---

trademark.
[12] Plaintiff seems to conflate the term "Cosmopolitan" with its "COSMOPOLITAN" Marks in its arguments, at times arguing that the term itself is distinctive, while at other times focusing on its Marks as distinctive.

## V. Conclusion

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Converted Summary Judgment Motion, appearing on the Docket as a Motion to Dismiss (DE 8), is GRANTED IN PART, DENIED IN PART.

Summary Judgment is GRANTED in favor of Defendants on Count III (Cybersquatting under the Lanham Act, 15 U.S.C. § 1125(d)).

Summary Judgment is DENIED with regard to Counts I (Trademark Infringement under the Lanham Act), II (Unfair Competition under the Lanham Act), IV (Common Law Trademark Infringement) and V (Common Law Unfair Competition)

DONE AND ORDERED in Chambers at West Palm Beach, FL, this 6 day of October, 2008.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to counsel of record